IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| **Larry Alexander Edwards,** )<br>    **Petitioner,** )<br>  )<br>**v.** )<br>  )<br>**C. Manis, Warden,** )<br>    **Respondent.** ) | **1:19cv1510 (TSE/IDD)** |

MEMORANDUM OPINION

Larry Alexander Edwards, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his June 28, 2016 convictions in the Circuit Court of the City of Norfolk. The respondent filed a Rule 5 Answer and a Motion to Dismiss with a supporting brief and exhibits. Petitioner has responded and filed a "Motion to Grant Petitioner's Writ." [Dkt. No. 16]. Accordingly, this matter is now ripe for disposition. A review of the record in this matter establishes that the respondent's Motion to Dismiss must be granted, and the petition must be dismissed with prejudice.

**I. Background**

Petitioner was indicted on October 3, 2013 for possession of heroin with intent to distribute as a third or subsequent offense, possession of cocaine as a third or subsequent offense, and possession of marijuana. (R. at 1-3).[1] On November 22, 2013, his attorney, Jon Babineau, filed a motion to suppress, which was heard and denied on April 7, 2014. (R. at 51, 106). On April 22, 2014, the circuit court granted Babineau leave to withdraw, and new counsel, London C. Crounse, entered his appearance on April 28, 2014. Crounse filed a supplemental motion to suppress on October 28, 2014. (R. at 98, 104, 108, 153-75). By order

---

[1] References to the circuit court record will be designated as follows: "R. at __."

entered December 10, 2014, the court re-opened the motion to suppress, heard additional testimony, and then denied the supplemental motion on April 30, 2015. (R. at 212). On June 4, 2015, attorney Andrew M. Sacks substituted in as petitioner's counsel. (R. at 208-10, 213-14).

On October 6, 2015, petitioner was convicted in a bench trial of possession with intent to distribute heroin third offense or subsequent offense; the lesser included offense of possession with intent to distribute cocaine; and possession of marijuana. (R. at 230-31). On May 15, 2015, petitioner was sentenced to a total of twenty-three years and twelve months in prison, with thirteen years and 12 months suspended, resulting in an active sentence of ten years in prison. (R. at 279-81). A judge of the Court of Appeals of Virginia denied his petition for appeal on March 10, 2017, and a three-judge panel denied that petition for appeal on June 29, 2017. (R. at 499-504). The Supreme Court of Virginia refused his petition for appeal on May 7, 2018. (R. at 498).

In denying the appeal, the Court of Appeals summarized the evidence from petitioner's trial as follows.

> [T]he evidence proved that on May 22, 2013, Officers Brock Martin and Benjamin Wade stopped the car appellant was driving. As Martin approached the vehicle, he detected the odor of marijuana. The officers also observed a gun on the car's dashboard. The officers removed appellant and his passenger from the car and searched the vehicle. Inside a loose air vent immediately to the left of the steering wheel, Martin found a small bag containing marijuana, a bag containing heroin, a bag containing cocaine, and an empty bag. The police recovered $1,327 from appellant and $1,825 from appellant's passenger. Appellant also carried an empty bag on his person. The officers located another firearm in the car's trunk. DNA testing linked DNA found on the bag containing marijuana to a known sample of appellant's DNA.
>
> Investigator Richard Stocks testified as an expert in the packaging and distribution of controlled substances. He explained that based on the totality of the evidence the cocaine and heroin recovered from appellant's car were inconsistent with personal use. He noted the heroin was not in "consumption form." He also emphasized that the large amount of cash and the empty bag

appellant carried in addition to the large quantities of the drugs suggested the drugs were not possessed for personal use.

(R. at 501).

On October 24, 2018, Edwards filed a petition for a writ of habeas corpus in the Virginia Supreme Court. Edwards v. Hamilton, Record No. 181368 (hereinafter, "Hab. R."). The petition raised six claims of ineffective assistance of counsel.

1) Counsel Babineau was ineffective for not proffering available evidence at the suppression hearing because the reason for the stop, a counterfeit inspection sticker, was dismissed on September 11, 2013, which would have resulted in the evidence seized being suppressed.
2) Counsel Sacks was ineffective for not investigating or objecting to DNA evidence.
3) Counsel Sacks was ineffective for not investigating the clerk's files.
4) Counsel Sacks was ineffective for not objecting to prosecutorial misconduct.
5) Counsel Sacks was ineffective for failing to investigate the chain of custody.
6) The prejudice of the claims should be viewed cumulatively.

(Hab. R. at 6-11). The court dismissed the petition on June 5, 2019. (Hab. R. at 55-59).

On November 14, 2019, petitioner executed his federal habeas petition. On January 29, 2020, he filed an amended petition for a writ of habeas corpus raising the following claims:

1) Counsel Babineau should have "interviewed Officer Benjamin Wade" and proffered "the dismissed citation for the counterfeit inspection sticker ... that would have provided evidence that Officer Martin was misleading the court to help salvage the Commonwealth's case of probable cause." Counsel should have also examined and photograph petitioner's car at the impound lot to show there was no marijuana shake[2] on the floor.
2) Counsel Sacks was ineffective for not investigating or objecting to forensic evidence.
3) Counsel Sacks was ineffective for not objecting to prosecutorial misconduct.

---

2 "Shake" has been defined as "the small bits of marijuana, usually leaves, that break off and accumulate at the bottom of a plastic bag containing marijuana when the bag is handled roughly," United States v. Krueger, 415 F.3d 766, 769 (7th Cir. 2005); and as "marijuana seeds plus broken stems and leaves." United States v. Baker, 905 F.2d 1100, 1105 (7th Cir. 1990).

## II. Exhaustion and Procedural Bar

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). To satisfy the exhaustion requirement, a petitioner "must have presented to the state court 'both the operative facts and the controlling legal principles.'" Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (citation omitted). Exhaustion requires that the "essential legal theories and factual allegations advanced in federal court . . . [are] the same as those advanced at least once to the highest state court." Pruett v. Thompson, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), aff'd, 996 F.2d 1560 (4th Cir. 1993) (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)). This means that both the same argument and factual support must be presented to the state court prior to entry into federal court. Anderson v. Harless, 459 U.S. 4, 6-7 (1982).

Federal claim 1, petitioner's ineffective assistance of counsel allegations regarding Babineau with respect to the April 7, 2014 suppression hearing, is similar to claim 1 in state habeas. However, most of the allegations raised in the federal claim 1 were not raised in state habeas through the Supreme Court of Virginia and are therefore not exhausted. In his state habeas, petitioner contended that the counterfeit inspection sticker charge "was disputed and dismiss[ed] on Sept. 11, 2013 after it was determined that the inspection sticker was not counterfeit or illegal." (Hab. R. at 6).[3] If Babineau had offered the dismissed charge in the suppression hearing, petitioner

---

[3] In the state habeas proceedings, Babineau submitted an affidavit stating that on September 11, 2013 there was no testimony or other evidence presented and the general district court granted the Commonwealth Attorney's motion to nolle prosse all the charges, including both the felonies and the counterfeit inspection charge. (Hab. R. at 47-48).

asserted, that would have shown that the stop was therefore illegal, and the ruling would have been "decided in his favor," resulting in suppression of the drugs. (Id. at 55).

The amended federal habeas petition has revised this claim and added to it. In the amended petition, petitioner no longer claims that the charge was tried and that the general district court determined the inspection sticker was not counterfeit or illegal, and instead admits that the charge was dismissed for failure to prosecute and adds new allegations. First, petitioner now alleges Babineau should have "interviewed Officer Benjamin Wade" and proffered "the dismissed citation for the counterfeit inspection sticker" to show "that Officer Martin was misleading the court to help salvage the Commonwealth's case of probable cause." [Dkt. No. 4 at 22]. Petitioner argues that if counsel had proffered the dismissed citation it would have shown that there was no probable cause for the citation and that Officer Martin fabricated his testimony about smelling burnt marijuana to "salvage the Commonwealth's case." [Id. at 23]. Second, petitioner now alleges Babineau was ineffective for not photographing the car while it was impounded, which would have shown no trace of the marijuana shake and that Officer Martin fabricated the probable cause for the search. [Id. at 24-26]. Petitioner asserts Babineau's failure to proffer the dismissed charge and take the photos prejudiced his case because the seized evidence was not suppressed. [Id. at 26].

Only those claims or arguments actually raised in the state habeas proceedings are exhausted. With respect to federal claim 1, other than the assertion that the dismissal of the counterfeit inspection sticker charge established there was no probable cause for the stop [Dkt. No. 4 at 21], the allegations of ineffective assistance of counsel in the amended petition were not raised in state court and therefore are not technically exhausted. The new allegations in federal claim 1 are nevertheless *deemed* exhausted because if petitioner attempted to raise this claim in state court at this time, the new allegations of ineffective assistance of counsel would be barred either as untimely

5

under § 8.01-654(A)(2), or successive under § 8.01-654(B)(2).[4] Accordingly, the unexhausted portions of federal claim 1 are simultaneously exhausted and defaulted for purposes of federal habeas review. See Baker, 220 F.3d at 288; Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990).

Respondent admits claims 2 and 3 are exhausted. [Dkt. No. 13 at 2].

### III. AEDPA Standard

The Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA) abolishes *de novo* review in federal habeas cases and requires deference to a state court's decision on the merits unless that decision was (1) contrary to, or an unreasonable application of a clearly established Supreme Court decision, or (2) based on an unreasonable determination of facts. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 403-13 (2000). Under 28 U.S.C. § 2254(e)(1), a federal court must presume a state court's determination of facts is correct unless rebutted by clear and convincing evidence. Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) (factual issue determined by state court "shall be presumed to be correct"); see also Sumner v. Mata, 455 U.S. 591, 591-93 (1983) (per curiam) (statutory presumption of correctness applies to state appellate court's rendition of historical facts).

Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's

---

[4] Virginia's limitations statute is an "adequate" procedural bar because it is firmly established, regularly and consistently applied by Virginia courts. See Sparrow v. Director, 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006) (citing Code §§ 8.01-654(A)(2) and 8.01-654(B)(2) as adequate and independent defaults that simultaneously exhausts and defaults unexhausted claims in federal habeas. See, e.g., Pope v. Netherland, 113 F.3d 1364, 1372 (4th Cir. 1997).

case." Id. The standard of reasonableness is an objective one. Id. at 410. The focus of a federal court under this standard "is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F. Supp. 152, 156 (E.D. Va. 1997).

### IV. Ineffective Assistance of Counsel Claims

Strickland v. Washington, 466 U.S. 668 (1984) requires a petitioner to show deficient performance and prejudice. To establish deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," id. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance," id. at 690. In making such a determination, a federal habeas court "must be highly deferential" and presume "that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy.").

To establish the prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; accord Lovitt v. True, 403 F.3d 171, 181 (4th Cir. 2005). The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his *actual* and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." Murray v.

7

Carrier, 477 U.S. 478, 494 (1986) (citations omitted). The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." Spencer, 18 F.3d at 233. Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice. Quesinberry v. Taylor, 162 F.3d 273, 278 (4th Cir. 1998).

The Supreme Court explained the impact of the deferential scope of federal habeas review of claims of ineffective assistance of counsel under Strickland in Harrington v. Richter, 562 U.S. 86, 101-02 (2011). Harrington explained a showing of error is insufficient under § 2254, because "[f]or purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. at 101 (citation omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102. As the Court succinctly stated, "[i]f this standard is difficult to meet, that is because it was meant to be." Id.

In applying Strickland, Harrington stated that a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fair minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." 562 U.S. at 102. Habeas relief is appropriate only if "there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Id. The Court noted that, even without § 2254's deference, the Strickland standard "is a most deferential one." Id. at 105. Moreover, "[w]hen combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether 'there is any reasonable argument that counsel satisfied Strickland's deferential

8

standard.'" Johnson v. Sec'y, DOC, 643 F.3d 907, 910-11 (11th Cir. 2011) (quoting Harrington, 562 U.S. at 105). Given "[d]ouble deference ... it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in" federal habeas. Johnson, 643 F.3d at 911; see Morva v. Zook, 821 F.3d 517, 528 (4th Cir. 2016) (double-deference standard effectively limits federal review "to a determination of 'whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.'") (citations omitted).

## V. Analysis

In state habeas, petitioner's sole exhausted federal claim regarding the dismissed counterfeit inspection sticker charge alleged that his trial counsel was ineffective for failing to introduce the dismissed charge to establish there was no basis for the stop. (Hab. R.at 55). When it dismissed claim 1, the Supreme Court of Virginia found that counsel was not ineffective for failing to proffer the dismissed inspection sticker charge at the suppression hearing because the charge had been dismissed for failure to prosecute, it had never been tried, and because petitioner had not been acquitted as he alleged in state habeas petition. (Hab. R. at 55). The Supreme Court of Virginia, based on Officer Martin's extensive testimony about the various inconsistencies between a valid inspection sticker and petitioner's inspection sticker, which was submitted to and examined by the trial court, held "that mere proof that the charge had been dismissed for failure to prosecute would not have undermined the officer's reasonable suspicion to conduct the stop." Id. at 56. The Supreme Court of Virginia dismissed claim 1 for failure to establish a claim under either prong of Strickland. The dismissal of this portion of federal claim 1 is not an unreasonable application of federal law or an unreasonable determination of facts, and the state court's finding is therefore entitled to deference.

Regarding the defaulted portion of federal claim 1, the exception recognized in Martinez v. Ryan, 566 U.S. 1 (2012) for defaulted ineffective assistance claims does not excuse the default in petitioner's case. In Martinez, the Court created a narrow exception to the rule announced in Coleman v. Thompson, 501 U.S. 722 (1991), which holds "that an attorney's ignorance or inadvertence in a post-conviction proceeding does not qualify as cause to excuse a procedural default." 501 U.S. at 754-55.

> Allowing a federal habeas court to hear a claim of ineffective assistance of counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim.

Martinez, 566 U.S. at 14 (citations omitted) (emphasis added). "Martinez emphasized that a petitioner's ineffective assistance of trial counsel claim must be a colorable one before post-conviction counsel can be deemed ineffective for failing to raise it." Moses v. Joyner, 815 F.3d 163, 169 (4th Cir. 2016) (citing Martinez, 566 U.S. at 14). As shown below, petitioner's new contentions are not substantial.

After he fired Babineau, the trial court allowed petitioner to reopen his motion to suppress to present additional testimony, which included photographs of the interior of his car that had been impounded for the sixteen months since his arrest and the hearing. Although he presented the pictures showing the absence of marijuana shake from his vehicle, the trial court reaffirmed its finding of probable cause based on the testimony of both officers that they had smelled burnt marijuana as they approached petitioner's vehicle. (3/3/14 Tr. at 12; 4/30/15 Tr. at 42-43). The court stated: "Based on the officers' testimony, both officers – they smelled burning marijuana – I find that there was probable cause." (4/30/15 Tr. at 57). Thus, evidence of the absence of

10

marijuana shake at an earlier time would have made no difference to the outcome of the suppression hearing. Indeed, during the argument about whether to re-open the suppression hearing, the trial judge stated counsel should talk to him "about the burnt marijuana, because whether there was shake on the floor or no shake on the floor, he smelled burnt marijuana." (12/3/14 Tr. at 5-6). Based upon the fact that petitioner's second attorney, Cousner, presented the photographs and evidence that there was no marijuana shake on the floor boards, and the trial judge chose to believe the testimony that both officers smelled marijuana, petitioner cannot show prejudice regarding this allegation of ineffective assistance of counsel.

Petitioner can also prove no prejudice regarding the dismissed counterfeit inspection sticker charge. Officer Martin went into detail at the March 3, 2014 suppression hearing about his experience with counterfeit inspection stickers and several factors he had observed from outside petitioner's vehicle about the inspection sticker that led him to conclude the inspection sticker was counterfeit. Officer Martin testified the color was wrong, it lacked a perforated void stamp, the fonts were wrong, it had a single layer versus the triple layer construction that a valid inspection sticker displays, the color was bleeding through, and an "R" on the decal was not the correct color. Officer Martin had issued summonses for close to two-hundred counterfeit inspection stickers. (3/3/14 Tr. at 7-11). In overruling the objection to the admission of the sticker, the trial judge noted that Officer Martin was "fluent with the differences between the legitimate ones and this one" and overruled the objection. (Id. at 45). The ruling admitting the inspection sticker is an implicit finding the sticker that had been on petitioner's vehicle was not "legitimate."[5] The unchallenged

---

[5] At an earlier bond hearing Babineau had stated that petitioner's inspection sticker "was not a Virginia state-issued official, if you will, inspection sticker." (10/31/13 Tr. at 13-14).

11

evidence at the hearing established that Officer Martin's observations prior to the stop provided reasonable suspicion to support the traffic stop.[6] See Heien v. North Carolina, 574 U.S. 54, 60 (2014) (an officer only needs "'reasonable suspicion'— that is, 'a particularized and objective basis for suspecting the particular person stopped' of breaking the law" for a traffic stop) (quoting Navarette v. California, 572 U.S. 393, 396 (2014)). The record establishes that the stop was valid and that this is not a substantial claim of ineffective assistance of counsel. The remaining portion of federal claim 1 will be dismissed.

Claim 2 alleges that petitioner's trial counsel, Sacks, was ineffective for not investigating and objecting to the DNA evidence introduced at his trial. The Supreme Court of Virginia found petitioner had failed to establish either prong of Strickland as to this claim. After detailing the chain of custody from the scene to the Division of Forensic Science (DFS), the court found Corporal Roy Sharp collected buccal swabs from petitioner, turned them over to

---

[6] Petitioner confuses the distinction between probable cause and reasonable suspicion by asserting the officers needed probable cause to stop his vehicle.

> "The police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989). The level of suspicion required to justify a search under Terry v. Ohio, 392 U.S. 1 (1968), must be based on more than an "inchoate and unparticularized suspicion or 'hunch,'" 392 U.S. at 27, but it need not rise to the level of probable cause to survive scrutiny under the Fourth Amendment. Id. at 22-24.

United States v. Perrin, 45 F.3d 869, 871-872 (4th Cir. 1995). The officers only needed reasonable suspicion to stop his car. See, e.g., United States v. Kellam, 568 F.3d 125, 136 (4th Cir. 2009) (district court did not err in ruling officer had reasonable suspicion of unlawful conduct to stop defendant's car where evidence established officer had seen the defendant cross the double center line, a violation of Virginia law). Thereafter, the smell of marijuana was sufficient to establish probable cause to search the vehicle. See United States v. Lewis, 606 F.3d 193, 198 (4th Cir. 2010) (finding probable cause justifying a vehicle search when an officer "smelled the odor of marijuana emanating from the vehicle").

someone he knew to be a DFS employee, submitted the two empty baggies and the three baggies carrying drugs to DFS, and that Sharp wore gloves when handling any of the evidence collected in petitioner's case. (Hab. R. at 57). The court made specific findings regarding DFS as well.

> Luke Grissom, a forensic lab specialist for DFS, testified he received the baggies from evidence receiving, swabbed each baggie containing drugs separately using sterile swabs and sterile water, packaged the swabs and labeled them, then repackaged all the evidence before submitting it for DNA analysis. Townley [a DFS forensic scientist] testified she swabbed one of the empty baggies, then performed DNA analysis on cutting[s] taken from each of the swabs, including swabs she testified were "submitted as being the buccal swabs from" petitioner. She developed a DNA profile from those items and determined petitioner could not be eliminated as a contributor to the DNA profile obtained from the swabbing of the baggie containing marijuana and that the probability of selecting an unrelated person with a DNA profile matching the DNA profile devolved from the marijuana baggie was one in greater than 6.5 billion.

(Hab. R. at 57).[7] Based upon the record, the court found that trial counsel could have concluded from the evidence that "the Commonwealth had sufficiently established the buccal swabs came from petitioner and the remaining swabs were taken from the baggies recovered from his car." (Id.).

Petitioner alleges that Grissom failed to follow DFS policy in documenting the location, size and amount of the stain he swabbed; and that Townley did not know what part of the baggie had been swabbed, what had been swabbed, or where the DNA had come from. [Dkt. No. 4 at 28-29]. Petitioner asserts that if counsel had raised these points as an objection to the certificate of analysis, the certificate would not have come in and he would not have been convicted of the drug charges. [Id. at 29]. Petitioner's points have no merit.

The Supreme Court of Virginia found that "the Commonwealth fully established the

---

[7] Officer Martin testified at trial that he wore gloves when collecting the evidence at the scene, and that each item was placed in a separate envelope. (10/6/15 Tr. at 73-74, 75).

13

chain of custody of the evidence," which included the swabs. In Virginia, once the chain of custody is established the evidence comes in, and the mere possibilities of contamination go to the weight and not the admissibility of the evidence. See In re Brown, 810 S.E.2d 444, 462 (Va. 2018) ("[w]here the possibility of contamination is mere speculation, the court should admit the evidence, and let any remaining doubt go to the weight of the evidence.") (citation omitted); see, e.g., Pope v. Commonwealth, 729 S.E.2d 751, 763 (Va. Ct. App. 2012) (officer's "failure to enumerate the items in his report or state how he kept them overnight did not constitute a missing 'vital link' in the chain of custody but rather went to the weight of the evidence.").[8] The Supreme Court of Virginia's conclusion that petitioner failed to satisfy either prong of Strickland is not an unreasonable application of federal law or an unreasonable determination of facts. Claim 2 will be dismissed.

In claim 3, petitioner alleges trial counsel was ineffective for not objecting to prosecutorial misconduct because the prosecutor failed to disclose its expert on drug distribution, Richard Stocks, which petitioner states was required under Rule 3:11, a state discovery rule. [Dkt. No. 4 at 30]. The Supreme Court of Virginia concluded that petitioner had failed to prove either prong of Strickland during the state habeas proceedings and dismissed this claim (claim 1(D) in state habeas).

> As previously stated, petitioner has failed to demonstrate that counsel was not aware of the Commonwealth's intent to call Stocks as an expert witness. Moreover, *the Commonwealth was not required to disclose its witnesses to petitioner before trial.* See Rule 3:11(b) (setting out the Commonwealth's discovery obligations). Finally, Stocks testified that while the heroin was

---

[8] See also Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311 n.1 (2009) ("'gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility.' It is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence; but what testimony is introduced must (if the defendant objects) be introduced live.") (citation omitted).

> "uncut" he did not know the purity of the heroin. Counsel could reasonably have determined this testimony did not undermine or otherwise conflict with the certificate of analysis. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(Hab. R. at 58) (emphasis added). Because the Supreme Court of Virginia determined the prosecutor did not violate Rule 3:11, counsel was not ineffective for failing to raise an objection that had no merit. See Moody v. Polk, 408 F.3d 141, 151 (4th. Cir. 2005) (counsel not ineffective for failing to raise a "futile" objection); see also Hough v. Anderson, 272 F.3d 878, 898 (7th Cir. 2001) ("ineffective assistance claim based on a failure to object is tied to the admissibility of the underlying evidence" because "if evidence admitted without objection was admissible, then the complained of action fails both prongs of the Strickland test"). The Supreme Court of Virginia's determination that petitioner failed to establish deficient performance or prejudice is not an unreasonable application of federal law or an unreasonable determination of fact and claim 3 will therefore be dismissed.

****

Petitioner's motion asserting that the respondent failed to respond to the petition in a timely manner is without merit. [Dkt. No. 16]. Respondent had thirty days after the February 25, 2020 order to file a response, which made his pleading due on or before March 26, 2020. General Order No. 2020-03 (Mar. 16, 2020), entered because of the COVID-19 virus, extended all filing deadlines that fell between March 17, 2020, and March 31, 2020, for fourteen days. Respondent's deadline under General Order No. 2020-0.3 therefore was extended to April 9, 2020. Respondent timely filed his Rule 5 Answer and Motion to Dismiss, with brief and exhibits, on April 6, 2020.

## VI. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 12] is granted, and this petition must be dismissed with prejudice. Petitioner's motion to grant his writ [Dkt. No. 16] is denied. An appropriate Order and judgment shall issue.[9]

Entered this 15th day of May 2020.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge

---

[9] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Edwards fails to meet this standard.

16